We have a motion to take up before we get to the day calendar. It's United States v. James Mellon. Are we ready to proceed with that? Yes, Your Honor. Okay. Just give us one second. Go right ahead. May it please the Court, my name is Frank Agostino. I am here for the appellant James Mellon. We're asking for a stay with respect to continued proceedings on an Internal Revenue Service summons. As the Court knows, the Southern District granted the United States' motion for stay. We have appealed on the basis of personal and subject matter jurisdiction. The gravamen of the merits is that the Court misinterpreted the time period for the words, because the plain language statute resides versus residing. But let me go through. Where does your client live? My client lives primarily in Switzerland, not in the United States. Does he have a residence in New York? He owns a piece of property in New York, but it's on – Does he have a residence in New York? No. We would take the position that he does not. And for the year – it's uncontroverted that in 2014, 2015, he didn't spend a day in the United States. The audit years are 2005 through 2011. The audit started in 2012. During that period, who owned the Fifth Avenue co-op? He owns it with his wife. They own the apartment. They've been married the whole time? They've been married the whole time. They do not file joint returns. They are not together most of the time. So my client renounces United States citizenship in 1977. When you renounce your citizenship and you are not subject to United States taxation unless you stay in the United States for more than a certain number of days or there is a substantial presence in the United States. So why call this a fair game for an audit? This is what happens every day when people make these claims. We're not challenging the IRS's ability to audit. We're challenging the IRS's ability to circumvent the hate convention on service. Essentially, if I can take you to the plain language of this – okay. The IRS is an administrative agency. They have the absolute power to audit. But think about – there are constitutional limits because we can't audit anyone. Your client has testified and produced documents, right? Our client has complied with the summons. He's appeared. He's testified. He's invoked his Fifth Amendment to the extent that the Fifth Amendment was appropriate. What are you looking for here? We don't want to have to come back, right? I mean, the irreparable harm is – I mean, the IRS has not stated that we're done, right? They've stated that – they're still evaluating his testimony, his invocation of the Fifth. So you want us to put a stopwatch on the IRS? We want to say that, one, either he's complied and this is moved, but that they won't say today. But, two, to say, look, the agency didn't do what it was supposed to do. I mean, the summons requires service at the last and usual place of vote. That's plain language in 7603. The IRS is an administrative agency. In order to acquire personal jurisdiction under the statute, it doesn't use the word residence. He must be served at his last and usual place of abode. If that last and usual place of abode is outside the United States, there are procedures under the Hague Convention. There's no dispute, though, to follow up on Judge Parker, that at the time of the service, he still owned the apartment and his wife lived there, right? He owned the apartment, but he had not been there in two years, right? What about his wife? His wife goes, you know, back and forth. Was she there at the time that was left with the doorman? That we're never going to know. She was there that day. Yes. Answer my question. Was she living there? I believe that you could take the position she's a resident there. They have residences in New York, Long Island, but then outside the United States. That's Mrs. Mellon. Mr. Mellon makes a concerted effort not to be in the United States more than a certain number of days. The statute says last and usual place of abode, right? And tax statutes are technical in nature. So to the extent that the last point I want to get to, last and usual place of abode. Your client had essentially complied with the summons and you were concerned that the IRS was going to ask him more questions and take up more time. Or ask him to come back, right? And that has lots of consequences. That's the irreparable harm, right? One, it violates his duty. What is that irreparable harm? Because the number of days he spends in the United States would be relevant to now 2017 taxation, 2016 taxation. Being forced to come from another country to come to the United States and answer questions, as opposed to answering questions at the embassy in Switzerland, that's also harm. There are collateral. They might not let him leave once he comes back into the United States. There's the potential for the writ naexiat republica. This is a civil case, not a criminal case. So if there are statutory reasons, so there is irreparable harm. Their knowledge of when he was last year was stale, right? The audit started, it's for the years 2005 through 2011. The audit started in 12. They served the summons in 14. And then they waited two years to ask the Court to enforce the summons. The, for lack of a better term. We've got your papers. We'll hear from the government.  Mr. Lilliewhite. Good morning, Your Honors. May it please the Court. My name is Jacob Lilliewhite, and I represent the United States. As you know, Mr. Mellon has asked this Court to stay the district court's order pending appeal. This Court should decline to do so, as each of the state factors strongly favors the government.  to succeed. In fact, as the district court noted, there was no justification, none, zero, for the respondents to flout the summonses. And the handful of arguments that Mr. Mellon has raised before this Court on the merits are not themselves with merit. Mr. Mellon challenges the district court's summary, rather subject matter jurisdiction, but the district court properly held it had subject matter jurisdiction pursuant to two statutes, one, 28 U.S.C. Section 1340, which grants jurisdiction over any civil action arising under any act of Congress providing for internal revenue, which this is, and as well as Section 1345 of that title, which grants jurisdiction over all civil actions, suits, or proceedings commenced by the United States, which this is as well. So what's the likelihood you're going to ask him more questions or seek more documents? Your Honor, at this point, the IRS is still reviewing. There's really no basis to do more than speculate about the chance of having, you know, requesting that Mr. Mellon return. At this point, Mr. Mellon has stated in his reply papers that he fully complied with the order that he appeared to testify. He invoked the Fifth Amendment only. When did he testify? On March 9th. Of this year? Of this year. So my question is, what's the likelihood you're going to ask him to come back for more questions? Yeah, unfortunately, Your Honor, until the IRS tells me what their evaluation is, I'm not in a position to tell you. But I can say at this point there's no reason to think. I have no reason to think that they're going to ask him. I just can't say one way or the other. And what kind of documents did he produce? So my understanding that right now the IRS is reviewing those documents. There are various financial documents that he produced in connection with various accounts, I believe, both here and abroad. So, I mean, is it bigger than a bread box? I mean, how many documents did he produce? Like one file, or do you have a lot of documents? Yeah, so, Your Honor, I will be honest here. The documents were produced to the IRS, not to me, and I haven't seen them myself. Mr. Mellon's attorney might be able to answer that. But I'm not sure exactly what the volume is. You didn't talk to the IRS about that? I've talked to the IRS generally. I know that one thing that they're doing is they, of course, have information about various accounts Mr. Mellon has, and they're trying to match up at this point whether each of the accounts they know he has are actually represented in his papers. Is it fair to say there was a substantial production? I believe there was a substantial production, yes, Your Honor. What else do you want to say? Just very briefly, Your Honor, with respect to personal jurisdiction, Mr. Mellon's chief merits argument seemed to be really addressed to personal jurisdiction, but he doesn't address the district court's factual finding, which as the district court noted was based on substantial evidence submitted by the government that Mr. Mellon, quote, resides at least part of at least part-time in his Fifth Avenue apartment. And just very briefly, that evidence includes Mr. Mellon's own representations both to the public and to the revenue agent in this case, including the power of attorney he signed and submitted to the revenue agent in this investigation, stating the Fifth Avenue address was his address. It also includes Mr. Mellon's own use of that address on financial forms, including one he signed and notarized in New York County, the records reflecting that he's owned this apartment since 1993,  and that he's a revenue agent to that address. And indeed, when the process server went to serve Mr. Mellon there, the doorman confirmed that Mr. Mellon does in fact live at that apartment. And Mr. Mellon in his paper asserts that because he's a foreign national, therefore he doesn't reside and is not subject to service there, but hasn't really engaged with any of that evidence. Does the code differentiate between domicile and residence? One can have multiple residencies, but one has one domicile. That's exactly right, Your Honor. And no, the 7603 speaks to where someone resides. And the relevant section here for personal jurisdiction, section 7402B speaks to where a person who is subject to summons resides or may be found. Or may be found? Or may be found. That's right, Your Honor. And for all of the reasons we've submitted in our papers, we don't believe there's been any showing of harm here. As Mr. Mellon's attorney just conceded, the only real contention here about harm is that if there is some separate proceeding where the United States decides after reviewing the production from Mr. Mellon that there hasn't been full compliance, if that were to eventually end up back in the district court, and if the district court eventually reached an adverse ruling, that there might be some consequences, the government would submit at that point in that separate proceeding would be the time for Mr. Mellon to appeal that order and request his stay. But at this point, any hypothetical proceeding would not be a basis for a finding of irreparable harm. Thank you. Thank you. We'll reserve decision on the motion and proceed.